**CERBERONICS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 630–85C.**

United States Claims Court.

Oct. 29, 1987.

---

Alan M. Lestz, Bronxville, N.Y., for plaintiff; Michael J. Hogan, of counsel.

Joseph A. Kijewski, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

FUTEY, Judge.

This government contract case comes before the court on defendant's motion to dismiss for lack of jurisdiction. Plaintiff, who initiated this action under the direct access provision of the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(1) (1982), seeks monetary relief from the Government under the terms of a service contract with the Department of the Navy. Defendant asserts that this court lacks jurisdiction because the claim(s) at bar differ from the claim(s) previously presented to and decided by the contracting officer. For the reasons discussed hereinafter, defendant's motion to dismiss is denied.

### Factual Background

Plaintiff entered into a contract (no. N68520–83–D–9033) with defendant, acting through the Department of the Navy's Naval Aviation Logistics Center, on August 19, 1982, whereby plaintiff was to provide services to Navy and Air Force C-9 aircraft. Fixed-price line item services included operating material storerooms at specified sites, performing engine overhauls, repairs and inspections as required, furnishing a logistics management system at specified sites, and providing home office logistics support for material procurement. The contract also provided that plaintiff was to open and operate additional storerooms, as well as furnish the necessary support services, as the Navy might require.

In July 1983 defendant advised plaintiff to open an additional storeroom at the Naval Air Station (NAS) in Glenview, Illinois. By contract modification no. A00094, dated July 27, 1983, defendant issued an unpriced order to plaintiff to procure a spare jet engine for use in C-9 aircraft at Glenview NAS at a maximum price of $780,000. The engine was duly purchased, and on September 23, 1983, plaintiff submitted a price proposal to defendant in the total amount of $779,220. This proposal consisted of the following: $720,000 (engine cost), $1,500 (freight cost), and $57,720 (profit/fee).

On February 24, 1984, however, the Navy's contracting officer issued a unilateral priced order definitizing the unpriced modification no. A00094 in the total amount of $722,391.50. This contract modification, no. A00139, reimbursed plaintiff for the following: $720,000 (engine cost), $417.50 (insurance), and $1,974 (freight cost). No amount was allowed the plaintiff for a profit or fee.

On May 21, 1984, plaintiff submitted a claim to the Navy contracting officer (CO) in the sum of $36,120. Plaintiff described this figure as "a fair and equitable fee to cover (1) finance charges incurred as a result of late payment by the Government as well as (2) CERBERONICS' successful efforts to obtain the best available price." On October 25, 1984, the contracting officer disallowed the claim. With respect to the two items of recovery sought by plaintiff, the contracting officer held that (1) "interest on borrowings and costs of financing capital are unallowable" under Defense Acquisition Regulation (DAR) 15–205.17, and (2) "Cerberonics is tasked by

virtue of the contract to obtain for the Government the best price available."[1]

The current action, appealing the above decision, was filed in this court on October 25, 1985. Plaintiff seeks an equitable adjustment of the home office logistics support line item in the contract of $36,120, based on three alternative causes of action: (1) contract section H–6, entitled "Change of Base Location or Operational Requirements," specifically provided for the equitable adjustment of fixed price items and award fee, such as "home office logistics support" for material procurement, affected by the establishment of an additional storeroom and changed requirements; (2) the work ordered by modification no. A00094 constitutes a change within the contract's changes clause, entitling plaintiff to an equitable adjustment for additional costs and a reasonable profit thereon; (3) the work ordered by modification no. A00094 constitutes a constructive change of the contract, entitling plaintiff to an equitable adjustment for additional costs and a reasonable profit thereon.

On defendant's motion, proceedings were suspended in December 1985 as the parties pursued negotiations toward a settlement. These negotiations were unavailing, however, and in March 1987 defendant filed its motion to dismiss. Oral argument was held on September 22, 1987.

*Discussion*

The direct access provision of the Contract Disputes Act of 1978 reads, in pertinent part, as follows: "... in lieu of appealing the decision of the contracting officer ... to an agency board, a contractor may bring an action directly on the claim in the United States Claims Court ..." (Such action) ... shall proceed de novo in accordance with the rules of the appropriate court." 41 U.S.C. § 609(a)(1) and (3) (1982).

Thus, an action in this court brought under the foregoing provision must be based on the same claim previously presented to and denied by the contracting officer. This jurisdictional requirement is spelled out in *Mark Smith Construction Co., Inc. v. United States*, 10 Cl.Ct. 540, 546 (1986):

A basic prerequisite to direct action in this court is that the contractor-plaintiff first must present its claim, in writing, to its duly designated contracting officer. 41 U.S.C. § 605(a), 609. Absent an appealable decision (actual or deemed) by the contracting officer on the claim proferred here, the direct access provision found at 41 U.S.C. § 609 is not applicable by its own terms.

Defendant argues that the "claim proferred here" is not the same as that presented to the contracting officer, so that no appealable decision of the contracting officer underlies the case at bar. As such, plaintiff's action would fail to satisfy the jurisdictional requirements of the direct access provision.

■ In determining whether a claim is properly before this court for the purpose of de novo review under the Contract Disputes Act (CDA), the Claims Court has generally looked to its "operative facts." If the complaint brought here is based on the same set of operative facts underlying the claim presented to the contracting officer, then this court has jurisdiction under the CDA. *Kunz Construction Co. v. United States*, 12 Cl.Ct. 74, 79 (1987); *J.F. Shea Co., Inc. v. United States*, 4 Cl.Ct. 46, 54–55 (1983). Agency boards of contract appeals, to whom negative decisions of contracting officers can be appealed under 41 U.S.C. § 607 and 608, have looked variously to the "ultimate character"[2] or "essential nature"[3] of the original claim, or whether the operative or legal facts have

---

1. The CO also cited as grounds for denial an October 5, 1984 opinion of the Armed Services Board of Contract Appeals on two other claims of plaintiff arising out of contract no. N68520–83–D–9033. These claims are unrelated to the case at bar, and the ASBCA opinion, issued after an expedited "small claims" procedure under the Contract Disputes Act of 1978, has no value as precedent. 41 U.S.C. § 608(e) (1982).

2. *Flores Drilling & Pump Co. v. United States,* AGBCA No. 82–204–3, 83–1 BCA ¶ 16,200 (1982).

3. *Stencel Aero Engineering Corp. v. United States,* ASBCA No. 28654, 84–1 BCA ¶ 16,951 (1983).

been changed on appeal.[4] The critical test appears to be whether the scheme of adjudication prescribed by the CDA is undermined by the contractor's claim on appeal—that is, by circumventing the statutory role of the contracting officer to receive and pass judgment on the contractor's entire claim.

■ As for the scope of de novo review under the Contract Disputes Act, various Claims Court and agency board decisions have held that such review permits the introduction of new facts and/or legal theories in support of the original claim.[5] Defendant in this action does not contest plaintiff's right to offer additional facts and legal theories in support of the claim previously before the contracting officer. What defendant does argue, however, is that plaintiff's complaint sets forth an entirely new claim, rather than additional facts or arguments in support of its original claim.

Cerberonics, in its claim before the contracting officer, sought a "fair and equitable fee" of $36,120 on account of finance charges incurred due to a late payment by the Government as well as services rendered in procuring the jet engine at the best available price. The foregoing sum represents 5% of the definitized contract modification issued by defendant in February 1984. Counsel for plaintiff indicated at oral argument that, to the best of his knowledge, the 5% figure consisted of a 1% late payment penalty Cerberonics was obliged to pay the vendor of the jet engine and a 4% fee for services performed in purchasing the engine.[6] The contracting officer denied both items in the claim on the grounds that (1) reimbursement for interest on borrowings and costs of financing is proscribed by a Defense Acquisition Regulation and (2) Cerberonics was not entitled to a fee because its contractual obligation

to obtain the best available price necessarily included rendering procurement services.

■ Plaintiff's action in this court, in the identical sum of $36,120, admittedly is not couched in exactly the same language as the claim presented to the contracting officer. In its three causes of action, plaintiff seeks an "equitable adjustment" of the home office logistics support line, either (1) pursuant to contract section H–6 authorizing adjustments of fixed price items and award fee to reflect changed requirements, (2) pursuant to the contract's changes clause, or (3) in recognition of a constructive change to the contract. The second and third causes of action specify that the equitable adjustment claimed is for "additional costs incurred and a reasonable profit thereon." Thus, plaintiff's Claims Court complaint deviates from the terminology of the original claim before the contracting officer, omitting such wording as "finance charges (resulting from a) late payment" and "obtaining the best available price," and inserting citations to specific contract provisions.

However, neither the language of plaintiff's complaint nor its explanation of this action in accompanying briefs and at oral argument indicate that it is based on a different set of operative facts or seeks different categories of relief. Both the "fair and equitable fee" sought by Cerberonics in its claim with the contracting officer and the "equitable adjustment" sought in this court are based on the work and expenses associated with procuring the spare jet engine. At the contracting officer level, Cerberonics simply stated the elements of its claim and left to the CO the task of determining the applicable contract provisions on which to base a ruling. In this forum, Cerberonics has cited specific contract provisions and an implied-in-fact

**4.** *Alart Plumbing Co. v. United States,* GSBCA Nos. 6487, 6690, 6923, 7129, 84–1 BCA ¶ 17,229 (1984).

**5.** *Kunz Construction Co. v. United States* (supra). *J.F. Shea Co., Inc. v. United States* (supra). *General Dynamics Corp. v. United States,* ASBCA 25919, 85–2 BCA ¶ 18,074.

*American Forest Products Co. v. United States,* AGBCA No. 79–170–1, 83–1 BCA ¶ 16,316 (1983). *Flores Drilling & Pump Co. v. United States* (supra).

**6.** Transcript of proceedings, p. 23.

contract theory to frame its claim for relief. As such, plaintiff's complaint augments the legal theories underlying its claim. But it does not change the essence of that claim—*i.e.*, that plaintiff is entitled, based on its contractual relationship with defendant, to compensation of $36,120 for the procurement services and late payment penalty associated with the purchase of the spare jet engine.

Defendant argues that the claim plaintiff has brought in this court—for an equitable adjustment to the home office logistics support line—is not the same as that presented to the contracting officer because the two grounds for relief in the original claim were easily dismissable under specific provisions of the contract. Thus, the contracting officer may not have considered the grounds of relief plaintiff is asserting in this action. The grounds of relief outlined in this action, however, represent plaintiff's legal argumentation, not the items specifically claimed. The equitable adjustment plaintiff seeks in the home office logistics support line is to account for the late payment penalty and a fee for services rendered—exactly what was claimed before the contracting officer. In the CO's judgment, Cerberonics was not entitled to such relief under the contract.

The case at bar is based on the same operative facts and seeks the same categories of relief in the same total amount. As such, it is properly before this court under the direct access provision of the Contract Disputes Act of 1978. The purpose of the CDA will not be defeated by this court proceeding to the merits of the claim.

Accordingly, defendant's motion to dismiss for lack of jurisdiction under 41 U.S.C. § 609(a)(1) is DENIED.