**LAIDLAW ENVIRONMENTAL SERVICES (GS), INC.,** Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 95–302C.

United States Court of Federal Claims.

Feb. 24, 1999.

William E. Hughes III, Milwaukee, Wisconsin, attorney of record, for plaintiffs.

Steven E. Gordon, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

## INTRODUCTION

This case involves a government contract for the disposal of waste generated by Army facilities in North Carolina. In dispute is the proper classification for magnesium batteries which determines the price plaintiff, Laidlaw Environmental Services, is paid for disposal. The issues currently before the court arise out of the plaintiff's partial motion for summary judgment and the government's motion to dismiss, or in the alternative for summary judgment. In its motion to dismiss, the government argues that this court lacks subject matter jurisdiction over Laidlaw's complaint because the company raises entitlement theories in the complaint in this court that were *not* presented in its administrative claim to the contracting officer, dated December 21, 1993. On the other hand, the parties' motions for summary judgment raise the following issues: i) whether the government improperly classified the magnesium batteries to be disposed of pursuant to the contract; ii) whether the government breached and/or changed the contract when it re-classified the magnesium batteries; and iii) whether the government failed to disclose its superior knowledge regarding the change in classification of magnesium batteries.

## FACTS

The following facts are undisputed, unless otherwise noted. On April 16, 1992, the Defense Reutilization and Marketing Services (DRMS) of the Department of Defense awarded a contract to plaintiff Laidlaw Environmental Services for the treatment and disposal of various wastes in North Carolina.

Disposal of such hazardous waste is regulated by the federal government under the Resource Conservation and Recovery Act (RCRA). 42 U.S.C. §§ 6901–6933 (as amended). Under authority of the RCRA, the Environmental Protection Agency (EPA) has classified waste that contains five parts per million (ppm) or more of chromium to be hazardous. 40 C.F.R. § 261.24.

The RCRA also allows states to promulgate their own equivalent hazardous waste program as follows:

> Any State which seeks to administer and enforce a hazardous waste program pursuant to this subchapter may develop and, after notice and opportunity for public hearing, submit to the Administrator an application, in such form as he shall require, for authorization of such program.... Such State is authorized to carry out such program *in lieu* of the Federal program under this subchapter in such State and to issue and enforce permits for the storage, treatment, or disposal of hazardous waste....

42 U.S.C. § 6926(b) (emphasis added). To obtain approval, a state program must be "consistent with" the RCRA and other state programs that have received final authorization from the EPA under this Act. 40 C.F.R. § 271.4.

Taking advantage of the RCRA's provision, allowing state programs to be operated

"in lieu of" the federal program, North Carolina applied for and received final authorization for its hazardous waste program in 1984. 49 Fed.Reg. 48,694 (E.P.A.1984). Later revisions to North Carolina's program were also given final authorization. *See, e.g.,* 51 Fed. Reg. 10,211 (E.P.A.1986), 53 Fed.Reg. 29,460 (E.P.A.1988), 54 Fed.Reg. 6,290 (E.P.A.1989), and 56 Fed.Reg. 1,929 (E.P.A.1991). North Carolina, in devising its hazardous waste program, has incorporated by reference the RCRA's list of hazardous waste and its criteria for identifying the characteristics of hazardous waste. 15A N.C. Admin. Code 13A.0106. Consequently, waste that is hazardous under the RCRA is also hazardous under the North Carolina administrative code.

The contract at issue before this court contained the following—a bid schedule setting forth the various wastes to be disposed; the estimated quantity of each invoice of disposable waste; and the unit prices to be paid to Laidlaw for each type of waste. To identify each item or type of waste, the bid schedule used a contract line item number (CLIN). The CLINs involving magnesium batteries are listed in the bid schedule as follows:

| Item No. | Supplies/Services | Unit Price |
|----------|-------------------|------------|
| CLIN 0500 | Batteries, Misc. | $0.20 |
| CLIN 0502 | Batteries, Magnesium (STATE REGULATED) | $0.11 |
| CLIN 6102 | [b]atteries, Magnesium [not regulated] | $1.53. |

Def.'s Mot. Dismiss App. at 769–773.

Waste with CLIN numbers 0001 through 5999, "Part I" CLINs, are hazardous waste and subject to disposal requirements. CLINs 6000 through 6600, "Part II" CLINs are neither state regulated nor RCRA regulated.[1] Thus, the schedule's clause c.32, entitled "Non–RCRA—State Regulated Waste" provides:

The CLINs listed below [all CLINs greater than 6000] are usually non-RCRA, non State Regulated waste. However, these CLINs may be regulated in certain states. If these items *are* regulated in the state where they are located, then they will be ordered under the appropriate PART I CLIN (CLINs 0001–5999). If these items *are not* regulated in the state where they are located, then they will be ordered under the appropriate PART II CLIN (CLINs 6000–6600).

Def.'s Mot. Dismiss App. at 789 (emphasis added). The contract, in clause 31, also offered Laidlaw an option to challenge the classification of a CLIN through "lab analysis and/or other supporting documentation." Def.'s Mot. Dismiss App. at 789. Reclassification of a CLIN from Part I to Part II, and vice versa, fell under the "Changes" clause of the contract. *Id.*

Prior to the contract at issue dated April 16, 1992, Laidlaw had a substantially similar contract with the DRMS, dated November 1, 1989, for waste removal and disposal. In several delivery orders issued near the end of performance under this *prior contract,* the government requested removal of magnesium batteries pursuant to CLIN 0502, used for "state-regulated" magnesium batteries. Several government studies, published in January 1992, were indicating that magnesium batteries might be hazardous under the RCRA because they exceeded the RCRA's limits for chromium. Laidlaw disputes that neither of the two government tests were readily available to the public or to contractors such as Laidlaw. The company states that it was *not aware* of one study until 1996 and that DRMS itself did not receive the study until *May 14, 1992,* after the contract at issue was signed. As for the other study, Laidlaw contends that it only became aware of it in May 1992 and did not receive a copy until 1993.

Additionally, Laidlaw commissioned its own tests of magnesium batteries. The first, performed December 12, 1991, by Analytical Industrial Research Laboratory (AIRL),

---

1. Oddly, the government, under this bid schedule, pays *less* for the disposal of magnesium batteries that are regulated, as indicated in CLIN 0502, even though they are subject to stricter disposal requirements, than it pays for the disposal of batteries that are not regulated, as in CLIN 6102. Common sense would dictate that waste requiring compliance with regulations would cost *more. See, e.g.,* Def.'s Mot. Dismiss at 9 n. 5. The circumstances for the foregoing inexplicable pricing schedule has not been explained to this court by either party.

found that magnesium batteries contained 19 ppm of chromium; two other studies found that the batteries contained less than 5 ppm of chromium. Laidlaw disputes the findings and significance of the AIRL study finding the batteries to be hazardous.

Laidlaw objected to the reassignment of the CLIN number in the prior contract on the grounds that the magnesium batteries did not exceed the RCRA's chromium limit. Several weeks after its initial objection, Laidlaw sent to the government the test results from its other studies. DRMS responded to Laidlaw's letters on February 11, 1992, *informing the company that it considered magnesium batteries to be toxic under the RCRA and thus state regulated.*

Several weeks later, on March 4, 1992, Laidlaw submitted its initial offer for the contract at issue; it was awarded the contract on April 16, 1992. After the contract was awarded, the DRMS issued six delivery orders, from May 18, 1992 to August 11, 1992, that required Laidlaw to dispose of magnesium batteries. In each of these orders, DRMS assigned CLIN 6102 to the magnesium batteries to be disposed. After Laidlaw performed the six delivery orders, DRMS retroactively modified them by changing the CLIN for magnesium batteries from CLIN 6102 to CLIN 0502.[2] The result of the modifications was a change in unit price for the services performed from $1.53 per pound to $0.11 per pound.

On December 21, 1993, Laidlaw filed a claim with the DRMS contracting officer in the amount of $290,211.39 on the basis that 16 delivery orders of magnesium batteries that were performed under CLIN 6102, were subsequently re-assigned, unilaterally, under CLIN 0502. Laidlaw's claim to the contracting officer made the following arguments:

i) The state of North Carolina *does not regulate magnesium batteries* so that the use of CLIN 0502 was erroneous;

ii) The basis of the tests finding the magnesium batteries to be *hazardous* is disputable;

iii) The government changed the terms of the contract when it informed Laidlaw it would use CLIN 0500 or CLIN 0502 in delivery orders because magnesium batteries exhibited "toxicity characteristics for chromium" making them a RCRA regulated waste;

iv) CLIN 0502 cannot be used on the contract because it is for state regulated batteries only and magnesium batteries are not regulated in North Carolina; and

v) A new "RCRA" CLIN with a unit price based on supportable data must be added to the contract.

The foregoing claim to the contracting officer was denied on April 21, 1994. One year later, on April 21, 1995, Laidlaw filed a complaint in this court alleging the following grounds for relief:

i) *Breach of Contract, i.e.,* the government in failing to assign CLIN 6102 to the delivery orders and by assigning CLIN 0502, breached the contract and damaged Laidlaw;

ii) *Constructive Change, i.e.,* the government's action in assigning CLIN 0502, rather than CLIN 6102, to magnesium batteries constituted a change to the contract, depriving Laidlaw of payment for its costs in connection with the disposal of magnesium batteries; and

iii) *Failure to Disclose Superior Knowledge, i.e.,* the government failed to disclose its knowledge regarding the change in classification of magnesium batteries prior to the award of the contract even though the government knew or had reason to know that Laidlaw was unaware of the reclassification of magnesium batteries.

On the foregoing prayers, Laidlaw seeks damages in this court in the amount of $290,-211.39.

---

2. Laidlaw characterizes these modifications as "unilateral[ ] ... contract modifications" (Pl.'s Proposed Findings of Uncontroverted Fact ¶ 14), while the government characterizes them as modifications made to "properly reflect that

CLIN 0502, which was already on the contract, should be used for the disposal of magnesium batteries" (Def.'s Statement of Genuine Issues ¶ 14).

## DISCUSSION

### 1. *Motion to Dismiss*

The government seeks to dismiss this case for lack of jurisdiction because *not all* of the theories of entitlement presented in Laidlaw's complaint before this court were presented before the contracting officer. In fact, the government asserts that there is a total lack of subject matter jurisdiction and seeks to dismiss *all* three of Laidlaw's claims averred in this court, pursuant to the Rules of the Court of Federal Claims (RCFC) 12(b)(1). It is hornbook law that any filing requirement or other prerequisite that affects this court's subject matter jurisdiction must be strictly construed and under no circumstances may it be waived by the court. *Laughlin v. United States*, 22 Cl.Ct. 85, 99 (1990), *aff'd*, 975 F.2d 869 (Fed.Cir.1992); *Catellus Dev. Corp. v. United States*, 31 Fed. Cl. 399, 404 (1994). Thus, failure to fulfill an indispensable administrative requirement prior to seeking this court's jurisdiction will cause a claim to be dismissed under Rule 12(b)(1).

Laidlaw, here at bar, invokes the jurisdiction of this court pursuant to the Contracts Dispute Act (CDA) provision allowing direct appeal to this court of a contracting officer's final administrative decision on a claim. 41 U.S.C. § 609(a)(1) (Supp.1998). In enacting the CDA, Congress waived its traditional sovereign immunity. *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1383 (Fed.Cir.1983). In such case, when the government consents to be sued, such waivers "must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). In short, it is unmistakably clear that the administrative requirements of the CDA are jurisdictional prerequisites to bringing suit in this court. *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338–39 (Fed.Cir.1983).

Pursuant to such CDA requirements, a contractor's claims must, therefore, be in writing and submitted to the contracting officer for a decision; and if the claim is over $100,000, the contractor must certify that the claim is made in good faith. 41 U.S.C. § 605(a), (c). Thus, a prerequisite to the litigation of government contract claims in this court is that a prior written claim must be submitted to a contracting officer for decision. 41 U.S.C. § 605(a). While filing a complaint in this court, contractors may increase the amount of their claim; however, contractors may not raise *any new claims* that have not been previously presented and certified to the contracting officer. *Tecom v. United States*, 732 F.2d 935, 937–38 (Fed.Cir. 1984), citing *J.F. Shea Co. v. United States*, 4 Cl.Ct. 46, 54–55 (1983). Therefore, without a final decision on a filed claim from the contracting officer, or a "deemed denial" decision, of a contractor's claim, this court does not possess jurisdiction to entertain the claim.

Previously, this court has had the opportunity to define the characteristics of a proper claim before a contracting officer, as well as to outline the required minimum equivalence between a complaint filed in this court and a prior claim before a contracting officer. A claim before a contracting officer, to be efficacious, need not be submitted in any particular form or wording. In fact, the claim need only consist of a "clear and unequivocal statement that gives the contracting officer *adequate notice of the basis* and amount of the claim." *Contract Cleaning Maintenance v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987) (emphasis added). Although a claim does not have to have the precision of a legal complaint, it must, nevertheless, provide the contracting officer with informative assertions as to the general nature and scope of a contractor's claim.

Consistent with the foregoing, therefore, when a complaint is subsequently filed in this court, we must first determine whether said complaint is "based on the same set of operative facts underlying the claim presented to the contracting officer." *Cerberonics v. United States*, 13 Cl.Ct. 415, 417 (1987). If the same set of operative facts can support the theory or theories before the contracting officer and before this court, this court has jurisdiction. *Id.* On such a record, the threshold judicial inquiry is described as follows:

The critical test appears to be whether the scheme of adjudication prescribed by the CDA is undermined by the contractor's claim on appeal—that is, by circumventing the statutory role of the contracting officer to receive and pass judgment on the contractor's *entire claim.*

*Id.* at 418 (emphasis added). Consequently, if the contracting officer at the administrative level in this case had notice of the general nature of all three of Laidlaw's claims subsequently filed before this court and previously passed judgment on them, then this court has jurisdiction as to each such claim.

■ As noted *supra,* the complaint in this court asserts three basic theories of liability, *i.e.,* i) breach of contract, ii) constructive change, and iii) failure to disclose superior knowledge. In contrast, the claim previously filed before the contracting officer asserted, in essence, that—i) CLIN 0502 cannot be used on the contract because it is for state regulated batteries only; ii) the tests indicating the toxicity of magnesium batteries are disputable; iii) magnesium batteries are not regulated in North Carolina; iv) the use of CLIN 0502 in the contract was erroneous; and v) such use constituted a change in the contract. Against this collective background, we hold, for reasons discussed *infra,* that we have jurisdiction over the first two legal theories presented in Laidlaw's complaint to this court. As to the third legal argument, *i.e.,* the failure to disclose superior knowledge, this is an *entirely new claim* that was not previously presented for administrative decision before the contracting officer.

The efficacy of the first two claims in the complaint—that the government breached its contract with Laidlaw and also constructively changed the contract with Laidlaw—depends on a determination whether CLIN 0502 was the proper identification number for the magnesium batteries to be disposed *under the provisions of the contract.* This question was clearly posed below for the contracting officer's administrative consideration because Laidlaw's claim asserted, *inter alia,* that the assignment of CLIN 0502 was erroneous. Moreover, the contracting officer, in his final decision, subsequently held that the government had, in fact, assigned the correct CLIN to the batteries. Because the essential nature of the first two theories of liability were presented below to the contracting officer and decided by the contracting officer, there exists here at bar a final considered decision as to those two claims that can be properly appealed to this court. Therefore, we hold that this court has subject matter jurisdiction over Laidlaw's first two claims.

■ The third claim before this court, however, *i.e.,* the *failure to disclose superior knowledge,* falls outside the questions presented below to the contracting officer. Moreover, this claim is not based on the operative facts needed to determine the proper assignment of CLINs, but rather it opens up an entirely new scope of inquiry. To meet the legal elements of a claim of failure to disclose superior knowledge, Laidlaw must produce evidence that—1) it undertook to perform the contract without knowledge of a fact that affects performance costs or direction; 2) the government was aware that Laidlaw had no reason to obtain such critical information; 3) any contract specification supplied misled Laidlaw, or did not put it upon notice to inquire; and 4) the government failed to provide the relevant and critical information. *GAF Corp. v. United States,* 932 F.2d 947, 949 (Fed.Cir.1991), citing *Lopez v. A.C. & S., Inc.,* 858 F.2d 712, 717 (Fed.Cir.1988). The nature of this last claim is an assertion regarding *what* the government and Laidlaw knew in regard to the toxicity of magnesium batteries, and *when* they knew it. While such a claim before the contracting officer need not be legally precise, if the general nature of this claim had been presented to the contracting officer, we would expect a statement in Laidlaw's claim to the effect that Laidlaw was *unaware* of the government studies finding that magnesium batteries were hazardous under the RCRA; that the government did not inform Laidlaw of the results of such studies; and that Laidlaw was damaged by this lack of, or withheld, knowledge. This claim is thus a new claim, and a variance, based on "operative facts" beyond those presented for the contracting officer's final decision and must, therefore, be dismissed.

█ Laidlaw contends, without citing to such source, that its original claim to the contracting officer contained the allegation that the government failed to disclose superior knowledge. It argues—rather lamely—that its original claim referred to government correspondence which stated that there was "new information" showing that magnesium batteries are a RCRA regulated waste. This mere reference to the government's letter, Laidlaw argues, was its claim that the government failed to disclose superior information. No reasonable person could have inferred, from reading Laidlaw's claim before the contracting officer, that Laidlaw was alleging that the government had superior information that Laidlaw did not possess, which it had a duty to disclose. The contracting officer, in her final decision denying Laidlaw's claim, does not even refer to the government's alleged failure to provide Laidlaw with the "new information." Because Laidlaw's third claim in its complaint is at substantial variance to the issues presented to the contracting officer for final decision, the contracting officer could not receive and pass judgment on such. No final decision on this theory could have been or was rendered, and consequently, this court does not possess subject matter jurisdiction over this claim. *J.F. Shea*, 4 Cl.Ct. at 54. The government's motion to dismiss Laidlaw's third claim regarding the failure to disclose superior knowledge is, therefore, granted.

2. *Motions for Summary Judgment*

Both parties seek summary judgment (plaintiff partially and defendant totally) pursuant to RCFC 56(c) which provides for judgment in favor of the movant if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." A "genuine dispute" is one in which a reasonable jury, or in this case a reasonable judge, could return a judgment for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden is on the moving party both to show that there is no genuine dispute as to any material fact and that it would be entitled to a directed verdict at trial. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d

142 (1970). In reaching a decision on summary judgment, the court is not to weigh or find the evidence, nor make credibility assessments, nor seek the truth of the matter. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Any doubt as to factual issues must be resolved in favor of the party opposing summary judgment to whom the benefit of all presumptions and inferences run. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

We will first assess the efficacy of the government's motion for summary judgement. Because the government seeks full summary judgment on all of Laidlaw's claims, a decision in the government's favor would be totally dispositive of Laidlaw's request for *partial* summary judgment. On the other hand, if the government's summary judgment motion is not granted, we will then consider the single issue presented for this court's consideration in Laidlaw's motion for *partial* summary judgment.

*(i) The Government's Motion for Summary Judgment—Breach of Contract and Constructive Change*

█ The government seeks summary judgment on all three claims in Laidlaw's complaint. Because we have previously held that Laidlaw's third claim—that the government failed to disclose superior knowledge—must be dismissed due to the lack of subject matter jurisdiction, *supra*, we need not consider the government's summary judgment motion as to that claim. With respect to the remaining two claims, the government seeks summary judgment on Laidlaw's claim that—i) the government breached the contract by assigning CLIN 0502 *rather than CLIN 6102* for the disposal of magnesium batteries, and ii) the government, by assigning CLIN 0502 *rather than CLIN 6102*, made a constructive change in the contract. The government, in essence, seeks a decision that, *as a matter of law*, the assignment of CLIN 0502 rather than CLIN 6102 was proper—meaning that the government could not have breached the contract or changed the contract due to the assignment.

In a summary judgment motion, the moving party bears the burden of demonstrating that there is no genuine issue of material fact. *Adickes*, 398 U.S. at 157, 90 S.Ct. 1598. This burden may be discharged if the moving party demonstrates that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The role of the judge is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. For the reasons given below, we find that there is a genuine issue of material fact, precluding summary judgment, as to whether CLIN 0502 or CLIN 6102 was the proper CLIN assignment.

Laidlaw, in both its claims, states that CLIN 6102 was the proper CLIN assignment. CLIN 6102 can only be assigned to those wastes that are neither regulated under the RCRA or under state law. Thus, if Laidlaw is asserting that CLIN 6102 was the proper CLIN, the imperative factual premise for that assertion is that magnesium batteries are *not* hazardous under the RCRA; in other words, that magnesium batteries do not contain chromium greater than or equal to 5 ppm. If the government is to herein prevail on summary judgement with respect to Laidlaw's claims for breach of contract and constructive change, it *must* demonstrate that there is no genuine dispute regarding the toxicity of magnesium battery waste.

Laidlaw disputes the government's contention that magnesium batteries are hazardous under the RCRA. It asserts, with a supporting affidavit, that the key element of whether a battery is hazardous is how much chromium is actually *leached* rather than how much chromium is contained in the battery. Laidlaw also disputes the relevance of those studies relied on by the government in declaring magnesium batteries to be hazardous under the RCRA standards. Moreover, Laidlaw has conducted its own studies that indicate the chromium level to be below the 5 ppm threshold. There is thus a clear material and genuine factual dispute as to whether magnesium batteries are hazardous under the RCRA guidelines.

Summary disposition is appropriate only if there is no genuine dispute over a *material* fact. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A material fact is one that might affect the outcome of the suit under the governing substantive law. *Id.* The dispute above is over which CLIN was the proper CLIN for magnesium batteries. The use of an improper CLIN could be held, for example, to be a constructive change of the contract, although we do not decide this issue now. Because resolution of this dispute would affect the outcome of the suit, it is a material fact. The government has failed to sustain its burden of proving that there are no genuine disputes of material fact. Therefore, the defendant's summary judgment motion is not appropriate and is denied.

### (ii) Laidlaw's Motion for Partial Summary Judgment—Assignment of CLIN 0502

Laidlaw seeks a *partial* summary judgment on the issue of the propriety of the assignment of CLIN 0502 for magnesium batteries. It contends that CLIN 0502 was not appropriate because CLIN 0502 pertained only to magnesium batteries that are "state regulated." "State regulated" waste has a "special meaning" as used in the contract, according to Laidlaw. It refers to waste that is regulated differently by the state from federal law. Laidlaw contends that because North Carolina has only incorporated the RCRA regulations by reference and does not have regulations that are "in lieu of," or more stringent than the RCRA, magnesium batteries are not "state regulated" in North Carolina. Thus, Laidlaw contends, the government's assignment of CLIN 0502 with a description "state regulated" was improper.

In a motion for summary judgment, we cannot make legal conclusions that are dependent on a fact that is in dispute. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Laidlaw seeks a ruling that CLIN 0502 was not the appropriate CLIN assignment. Such a legal conclusion must be based on the factual predicate that magnesium batteries are hazardous and thus regulated under the governing standards. In other words, to

conclude that CLIN 0502 was an appropriate assignment, we must first find that, under the RCRA standards, magnesium batteries contain, or leach, chromium in amounts equal to or greater than 5 ppm. If the facts reveal that the batteries are hazardous, then this court must decide, as a matter of law, whether the disposal of hazardous magnesium batteries is state rather than federally regulated. If, on the other hand, the facts show that the batteries are not hazardous, we need not consider the issue of whose law governs waste disposal in North Carolina. Thus, the same genuine issue of material fact—whether magnesium batteries contain an amount greater than or equal to 5 ppm of chromium—that prevents us from granting the government's motion for summary judgment, *supra*, also prevents us from granting partial summary judgment. Therefore, Laidlaw's motion for partial summary judgment is denied because there exists a genuine issue of material fact.

### CONCLUSION

The government's motion to dismiss is DENIED as to Laidlaw's claims i) for breach of contract and ii) for constructive change. However, the government's motion to dismiss is GRANTED as to Laidlaw's claim iii) for failure to disclose the government's superior knowledge, and, as there is no just reason for delay, the Clerk shall now enter judgment thereon pursuant to Rule 54(b).

Laidlaw's motion for partial summary judgment is DENIED. The government's motion for summary judgment is also DENIED.

The following Appendix G schedule with regard to Laidlaw's claims i) and ii) is hereby implemented:

1. All discovery shall be completed within 30 days, *i.e.*, by March 26, 1999.

2. The parties shall comply with paragraph 10 of Section V of Appendix G by April 9, 1999.

3. Plaintiff shall comply with paragraphs 11–13 * of Section V of Appendix G on or before April 23, 1999.

4. Defendant shall comply with paragraphs 11–13 * of Section V of Appendix G on or before May 18, 1999.

5. The parties shall comply with paragraphs 14–15 of Section V of Appendix G on or before May 18, 1999.

As to paragraph 14 (Stipulations), the joint memorandum shall be in two parts:

a. The first part shall contain separately numbered paragraphs covering all matters to which the parties have stipulated during the course of the proceedings. The stipulations must be comprehensive and the fact that any matter may have been established during discovery by admission or otherwise is not grounds for omitting it from stipulation. A party may not refuse to stipulate as to the content or purport of a document simply by claiming that the document is the best evidence of its content. Nor is the fact that a party deems a fact irrelevant a sufficient basis for refusing to stipulate to its existence. Relevancy may be argued in the Memorandum of Contentions of Fact and Law.

b. The second part of the memorandum shall set forth any matters a party proposes to be stipulated, as to which the parties have failed to reach agreement, and which the proponent of the stipulation believes are not reasonably subject to dispute. Each such proposed stipulation shall be set forth in full, together with the reasons the proponent believes the matter is not subject to dispute. The opposing party must explain beneath why and to what extent it believes the matter to be in dispute.

6. If contemplated, the parties shall comply with paragraph 16 of Section V of Appendix G on or before May 18, 1999.

7. The pretrial conference shall be held at 10:00 a.m. on June 8, 1999, at the Howard T. Markey National Courts Building, 717 Madison Place, N.W., Washington, D.C. 20005. The exact courtroom location will be posted

---

* Witnesses shall be characterized as fact, expert, or fact/expert. The anticipated length of the trial and requested trial location shall also be stated.

The parties are not required to file proposed findings of fact (paragraphs 11(a) and 11(b)).

in the lobby at that time. The trial date and location will be set at this conference.

**IT IS SO ORDERED.**