**KEWEENAW BAY INDIAN COMMUNITY,**
Plaintiff,

v.

**Kathleen SEBELIUS, et al., Defendants.**

**No. 2:12–cv–115.**

United States District Court,
W.D. Michigan,
Northern Division.

April 5, 2013.

Vernle Durocher, James K. Nichols, Dorsey & Whitney LLP, Minneapolis, MN, for Plaintiff.

Ryan D. Cobb, U.S. Attorney, Grand Rapids, MI, for Defendants.

### OPINION AND ORDER

TIMOTHY P. GREELEY, United States Magistrate Judge.

Plaintiff Keweenaw Bay Indian Community has filed a motion for leave to file a second amended complaint. Defendants Kathleen Sebelius, Secretary of Health and Human Services; Yvette Roubideaux, Director of the Indian Health Services, and United States of America argue that the motion should be denied as futile, because the proposed second amended complaint raises claims that plaintiff failed to administratively exhaust. Leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir.1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir.1995), *cert. denied*, 517 U.S. 1121, 116 S.Ct. 1354, 134 L.Ed.2d 522 (1996).

Plaintiff filed this lawsuit to collect amounts allegedly underpaid to fund tribal health care services. Medical services are provided under contract with Indian Health Services in accordance with the Indian Self–Determination and Educational Assistance Act, 25 U.S.C. § 450, *et seq.*

In *Arctic Slope Native Association, Ltd. v. Sebelius*, 583 F.3d 785 (Fed.Cir.2010), the court explained:

The ISDA was enacted in 1975 to promote tribal autonomy by permitting Indian tribes to manage federally funded services that were previously administered by the federal government. *See* 25 U.S.C § 450a; *Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 634, 125 S.Ct. 1172, 161 L.Ed.2d 66 (2005). Transfers of federal programs to tribal control under the ISDA are accomplished through "self-determination contracts" under which a tribe agrees to

take over administration of a federal program such as an IHS hospital or clinic. 25 U.S.C. § 450f(a). The government is required to provide self-determination contractors with the same amount of funding that would have been appropriated for the tribal programs if the government had continued to operate the programs directly. *Id.* § 450j–1(a)(1).

*Id.* at 788.

Plaintiff claims that defendants underpaid contract support costs for the fiscal years 2004 and 2005. At the October 31, 2012, Fed.R.Civ.P. 16 scheduling conference, plaintiff indicated that it planned to amend the complaint to add claims for the years 2006 through 2009. Defendants do not object to plaintiff's request to amend the complaint to add claims for the years 2006 through 2009, to the extent those claims were presented to and denied by the contracting officer.

Defendants object to the proposed second amended complaint to the extent that plaintiff's request for relief is different from what was presented in the Contract Dispute Act (CDA) administrative claim that the tribe filed before seeking federal court intervention. Defendants maintain that the proposed amendments contain new claims that were not exhausted. According to defendants, plaintiff is requesting damages based upon new rates and new theories that were never presented at the administrative level. Plaintiff asserts that the claims are not new claims, but rather arise out of the same operative facts presented to the contracting officer. Further, plaintiff argues that the contracting officer denied every claim, past present and future, that could be presented. Therefore, plaintiff argues that the claims were effectively exhausted and that it would be futile to require plaintiff to exhaust these new claims.

In *Pueblo of Zuni v. United States*, 467 F.Supp.2d 1099 (D.N.M.2006), plaintiff filed a lawsuit to recover damages for underpayment of contract amounts awarded under the ISD and ISDA. Defendants filed a motion to dismiss for lack of exhaustion. Plaintiff's CDA claims were for indirect costs calculated under the indirect cost rate. Plaintiff amended these claims to make additional indirect cost claims seeking $339,933.44. Defendants moved to dismiss the damage claims that were not presented under the CDA.

The court found that exhaustion under the CDA was a mandatory jurisdictional requirement that cannot be excused, and further explained:

> The CDA does not bar a plaintiff from seeking an amount of damages that exceeds the quantum in the claim to the contracting officer. The excess amount sought however, must spring from the same certified claim. Plaintiff may not seek damages for a new claim—that is, a claim not yet submitted to and decided by the contracting officer. *SMS Data Products Group, Inc. v. U.S,* 19 Cl.Ct. 612, 615 (1990). A district court, however, could have jurisdiction over an unexhausted claim where the issues in the claims are based on the same set of operative facts.

*Id.* at 1109–10.

The court decided that if the Tribe simply sought a different amount of relief than the amount that was presented to the contracting officer, then the claim would arise out of the same operative facts. In contrast, if the Tribe requested an amount based on new theories or new claims, then the claims are unexhausted. The court set forth the legal standard:

> In *Johnson Controls World Services, Inc. v. U.S.*, 43 Fed.Cl. 589, 594–95 (Fed.Cl. 1999), the court addressed whether it had jurisdiction over a counterclaim that had not been presented to the contracting officer. The court found that the counterclaim arose from the same operative facts only to the extent the counterclaim sought an identical amount of relief to the contracting officer's claim. To the extent that the counterclaim sought a different amount of relief, that relief was based on a different set of operative facts, and the counterclaim could not be heard because it had not been first presented to the contracting officer.

> The critical test for determining whether the operative facts are the same in later claims seems to be whether the scheme of adjudication prescribed by the CDA is un-

dermined by the contractor's claim on appeal—in other words, whether the claim circumvents the statutory role of the contracting officer to receive and pass judgment on the contractor's entire claim. *See, Diversified Energy, Inc. v. Tennessee Valley Authority,* 339 F.3d 437, 445 (6th Cir. 2003) (quoting *Cerberonics, Inc. v. U.S.,* 13 Cl.Ct. 415, 418 (Cl.Ct., 1987)). The contracting officer must be afforded "adequate notice of the basis and amount of the claim." 26 Cl.Ct. at 945. *Foley Co. v. U.S.,* 26 Cl.Ct. 936 (Cl.Ct.1992) (discussed in context of Government counterclaim). In *Cerberonics, Inc. v. U.S.,* 13 Cl.Ct. 415, 417 (Cl.Ct.1987), the court found that the complaint was based on same set of operative facts underlying the claim presented to the contracting officer, and therefore had jurisdiction, because the complaint filed in federal court sought the identical amount of relief as the claim which was presented to the contracting officer, and was denied. The court found that, although the grounds for relief in the complaint were expressed differently than those stated in the claim to the contracting officer, the claims articulated in the complaint did not seek different categories of relief and that the "essence" of the claim remained the same: that plaintiff in that case was entitled, based on its contractual relationship with the defendant, to the same amount of compensation ($36,120) as had been sought in the administrative claim. *Id.,* at 417–419.

In *Tunica–Biloxi Tribe v. U.S.,* No. 02–2413 (D.D.C.), the action which was originally filed in this district, the federal district court in the District of Columbia relied on both *Johnson Controls* and *Cerberonics* to determine whether certain claims sought to be litigated by the tribes should be dismissed. The court dismissed claims over contract disputes for fiscal years which had not been submitted to the contracting officer, reasoning that "claims involving different fiscal years involve different facts, which results in different amounts being claimed by each plaintiff for each fiscal year." *Tunica–Biloxi,* Mem. Opin. at 11–15 (attached as Ex. E to Defts.' Mot.). On the other hand, the court concluded that claims which were premised on an alternative theory (alleged breach of the implied covenant of good faith and fair dealing) would not be dismissed, noting that plaintiffs were not seeking "any additional sums of money based on the [alleged breach]." *Id.,* at 11–15.

*Id.* at 1110–11.

As a result, some unexhausted claims were not dismissed because the court found that the claims arose out of the same operative facts that were presented to the contracting officer. Specifically, claims requesting different relief based upon different facts than those presented to the contracting officer were dismissed. The court explained that claims based upon the new miscalculation theory could not proceed without first presenting them to the contracting officer, because there was never a "mention about a failure to adjust indirect cost rate" in the CDA claim. *Id.* at 1111.

The increase in the damages amount requested by Plaintiff in the miscalculation claims cannot be attributed to an error in Plaintiff's calculation of damages, or from Plaintiff's learning of facts subsequent to the time the federal complaint was filed which would increase the damages amount.

*Id.* at 1112.

Further, the court found that the requirement that the claim must state the basis and amount of the claim at the time the claim is certified to the contracting officer should not be ignored. The court concluded by rejecting plaintiff's argument that it would be futile to exhaust the claims, because futility is not an excuse for nonexhaustion.

Plaintiff's proposed second amended complaint describes three types of contract support costs: start-up costs, indirect costs and direct cost. At issue are indirect costs and, specifically, those costs that are based upon a rate miscalculation claim and costs for third party loss based upon an expectancy theory. Defendants argue that these costs are based upon new theories that were never presented to the contracting officer. Plaintiff argues that since the contracting officer denied the claims, in part, because they failed to apply

the correct indirect rate, then plaintiff can proceed in this lawsuit by asserting a correct indirect rate.

For each year plaintiff alleged in their administrative claims that they were underpaid and entitled to additional funds, plaintiff multiplied their alleged underpayment by the indirect cost rate for the contract year. Plaintiff never suggested in their administrative claims that the indirect cost rate was miscalculated. Similarly, plaintiff never made any claims for third party billings under any theory. It was the obligation of plaintiff to present each of these claims in the administrative action. The fact that IHS may have denied all the claims does not relieve plaintiff from this obligation, as a futility assertion is not available as an excuse not to exhaust each claim.[1]

Further, plaintiff is required under the regulations to provide a statement to the contracting officer that gives the "sum certain" amount of the alleged underpayment based upon the contract. The regulation defines a claim:

> *Claim* means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.

48 CFR 2.101. Plaintiff cannot now modify the claims as asserted in the administrative action and bring new unexhausted claims to this court. Plaintiff still has an available remedy to exhaust most, if not all, of the claims at the administrative level.

Accordingly, plaintiff's motion for leave to amend the complaint (Docket # 37), as it is currently presented in the proposed second amended complaint, is DENIED. Plaintiff shall not be allowed to amend the complaint to assert claims based upon a miscalculated indirect cost theory and for third party billing claims based upon an expectancy theory. Plaintiff may, however, amend the complaint to add years 2006 through 2009, as agreed to

by the parties. However, indirect costs may only rise in the same manner as the indirect costs claims that were presented in plaintiff's first amended complaint.

IT IS SO ORDERED.

---

1. The failure to present these claims in their administrative action deprives this Court of the benefit of the contracting officer's analysis of these claims. Had these new claims been presented to the contracting officer, the contracting officer's decision on those claims could have been material to this Court's analysis of the questions presented.