**ORBAS & ASSOCIATES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–135C.

United States Court of Federal Claims.

Aug. 16, 1995.

William L. Bruckner, San Diego, CA, for plaintiff.

Lisa B. Donis, Washington, DC, with whom was Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Assistant Director Richard E. Rice, for defendant.

## ORDER

TIDWELL, Judge:

This case is before the court on the parties' cross motions for summary judgment filed pursuant to RCFC 56. For the reasons set forth below, the court grants defendant's motion for summary judgment and denies plaintiff's cross motion.

## FACTS

On September 15, 1992, Orbas & Associates (Orbas) contracted with the United States Navy to build a Fixed Aircraft Start System at the Naval Air Station in Miramar, California. The contract was to be completed by June 12, 1993, for a price of $1,460,500. The contract, in part, required Orbas to construct a pre-fabricated metal air compressor building.

On December 9, 1992, Orbas issued to the Navy a Request for Information, seeking color and finish details for the building. Following this Request, Orbas also indicated that the design plans did not depict any wall or roof insulation or liner panels. Orbas stated that it could install any of these items for an additional cost. The Navy's Resident Officer in Charge of Construction responded that the contract required insulation of the building and referred Orbas to contract specification section 13121, subparagraph 2.1.3, which called for factory-insulated panels.

On January 20, 1993, Orbas asserted that because the contract drawings did not show insulation, there was a conflict between the plans and the specifications. Orbas stated it should therefore be compensated for installing insulation because this constituted a change to the original contract. On January 28, 1993, the Resident Officer in Charge of Construction reiterated that the contract required factory-insulated panels, and that under Federal Acquisition Regulation (FAR) 52.236–21, in situations where specifications conflict with plans, the specifications control. Orbas did not dispute that the contract incorporated FAR 52.236–21.

Between February 3, 1993, and March 9, 1993, Orbas and defendant exchanged correspondence discussing the availability of a supplier who could provide factory-insulated panels conforming to the contract specifications and whether such insulation constituted a contract requirement in the first place. Finally, on March 9, 1993, Orbas submitted a request for a variance in the contract, asking that the contract be changed to permit use of field installed insulation. The Navy approved the request and permitted Orbas to use either factory-installed panels or field-installed insulation with lower grade specifications.

On March 23, 1993, Orbas submitted to the contracting officer a claim in the amount of $46,167.85, and request for a 75–day time extension for the supply and installation of insulated panels to the pre-engineered metal building. On May 20, 1993, the contracting officer denied the claim in its entirety. Orbas then filed suit in this court on March 7, 1994.

In its complaint, Orbas alleged two claims arising from the contract. First, Orbas sought relief in the amount of $46,167.85 plus interest for supplying and installing insulation to the pre-engineered metal building. Second, Orbas sought $51,400 which the Navy withheld from a progress payment for

Orbas. The Navy alleged that the $51,400 represented liquidated damages in addition to costs for deleted contract work, non-performance of equipment tests, and failure to deliver operation manuals. The parties, however, settled the second claim, and thereafter plaintiff dismissed it voluntarily. Thus, only the first claim for the supply and installation of insulation remains at issue.

## DISCUSSION

Summary judgment is appropriate when there exist no disputed genuine issues of material fact, and the moving party is entitled to a judgment as a matter of law. RCFC 56(c). A genuine issue of material fact is present if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden of proof rests upon the party opposing the motion to prove by sufficient evidence that a genuine issue of material fact positively remains. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Any evidence presented by the non-movant is to be believed and all justifiable inferences drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Adickes,* 398 U.S. at 158–59, 90 S.Ct. at 1608–09.

When there are motions for summary judgment by both parties, the court must scrutinize each participant's motion on its own merits. "Accordingly, this court must draw all reasonable inferences against the party whose motion is under consideration." *Robinson Contracting v. United States,* 16 Cl.Ct. 676, 680 (1989); *see Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987). When parties have moved for summary judgment, the court is not required to grant judgment as a matter of law for one party or the other; it may deny both. *Mingus,* 812 F.2d at 1391.

At the threshold the court must address whether its jurisdiction over this suit is proper. Lack of subject matter jurisdiction constitutes a defect that cannot be waived.

*Spirit Leveling Contractors v. United States,* 19 Cl.Ct. 84, 89 (1989) (citing *Hambsch v. United States,* 857 F.2d 763, 765 (Fed.Cir. 1988)). "[I]t is well settled that a federal court, whether trial or appellate, is obliged to notice on its own motion the want of its own jurisdiction." *Id.*

■■■ Plaintiff filed suit in this court pursuant to the Contract Disputes Act (CDA), 41 U.S.C. § 609(a)(1). The law is well settled that claims brought under the CDA must be in writing and submitted to the contracting officer for a decision. 41 U.S.C. § 605(a). *Santa Fe Engineers, Inc. v. United States,* 818 F.2d 856, 858 (Fed.Cir.1987). *SMS Data Products Group, Inc. v. United States,* 19 Cl.Ct. 612, 615 (1990) (citing *Paragon Energy Corp. v. United States,* 645 F.2d 966, 227 Ct.Cl. 176, 183–84 (1981)). This court "has jurisdiction only where and to the extent that the government has waived its sovereign immunity, and any waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Overall Roofing & Constr. Inc. v. United States,* 929 F.2d 687, 688 (Fed.Cir.1991) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)). The CDA does not require that a claim be submitted under any particular form or wording. *See Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987). "All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.* (citing *Tecom, Inc. v. United States,* 732 F.2d 935, 936–37 (Fed.Cir.1984)); *Al Munford, Inc. v. United States,* 30 Fed.Cl. 185, 189 (1993); *Mega Const. Co., Inc. v. United States,* 29 Fed.Cl. 396 (1993).

In an action in this court a contractor may increase the amount of its claim, but may not raise any new claims not presented and certified to the contracting officer. *Santa Fe Engineers,* 818 F.2d at 858; *Spirit Leveling Contractors v. United States,* 19 Cl.Ct. 84, 90 (1989). In this case, plaintiff's claim in this court differs from its claim to the contracting officer. Thus, the court finds that plaintiff's complaint was not predicated on a valid claim

submitted to a contracting officer. The court therefore does not have subject matter jurisdiction to consider plaintiff's case.

On March 23, 1995, plaintiff submitted a claim to the contracting officer seeking $46,-167.85 for insulated roof and wall panels. The contracting officer issued a final decision on May 20 of that year which rejected plaintiff's claim. It stated:

> While the contract drawings referenced in Orbas' claim may not depict the insulation, the provision and installation of insulation is clearly a requirement of the work to construct the pre-engineered metal building as evidenced by the specification sections concerning said building.... It was unreasonable for Orbas to assume it did not have to provide the subject insulation in the face of such clear requirements.

Plaintiff filed a complaint in this court on March 7, 1994. The complaint requested compensation for costs incurred as a result of "the absence of design criteria indicating that the contract includes insulated panels for the metal building in the walls or roof...." In its motion for summary judgment plaintiff clarified this somewhat vague request. According to the motion, defendant unreasonably interpreted the contract by requiring factory-installed insulation instead of field-installed insulation.

Plaintiff's claim in this court thus differs from the claim it submitted to the contracting officer. The claim to the contracting officer involved whether plaintiff was required to install any type of insulation. The claim in this court concerned the type of insulation required by the contract, not whether insulation was required. In fact, plaintiff admitted in its motion for summary judgment that insulation was required, stating: "The specifications and the plans, when read as a whole, plainly call for field installation of loose insulation in the pre-engineered buildings's walls and roof."

Orbas' claim in this court therefore was not previously submitted to and denied by the contracting officer. By presenting a claim based on the theory the contract did not require insulation, Orbas put at issue whether insulation constituted a contract requirement *at all.* Plaintiff never afforded the contracting officer adequate notice that it sought compensation for being required to install a type of insulation not mandated by the contract. Had Orbas originally provided adequate notice of this claim, the contracting officer might very well have granted the relief sought, especially in light of the fact that defendant later approved a variance allowing Orbas to field-install the insulation. The possibility of vastly different outcomes by the contracting officer on these two claims constitutes strong evidence that the basis of each claim differed from that of the other. Because Orbas "did not submit to the contracting officer a clear and unequivocal" claim for the field-installation alternative, this court is without jurisdiction to decide that claim. *Contract Cleaning,* 811 F.2d at 592. *Reliance Ins. Co. v. United States,* 931 F.2d 863, 865 (Fed.Cir.1991).[1]

## CONCLUSION

This case involved two claims, one for withheld progress payments, and one for installing insulation. The first claim was settled and is no longer at issue. The second claim failed to meet the jurisdictional requirements of the Contract Disputes Act and therefore is dismissed for lack of subject matter jurisdiction. The clerk is directed to dismiss the complaint. No costs.

**IT IS SO ORDERED.**

---

1. Even if it did have jurisdiction over this case, the court fails to see how plaintiff has been harmed as a result of field-installing loose insulation. It appears the March 9, 1993 contract variance granted exactly what plaintiff seeks here. The only damages to plaintiff the court can find are the costs associated with attempting to locate a supplier of factory-insulated panels before defendant allowed the variance. The court cannot imagine that those incidental costs amount to the $46,167.85 plaintiff seeks here.