**LAROSA'S INTERNATIONAL FUEL CO. INC. and Joseph LaRosa, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 97–834T, 97–835T.**

United States Court of Federal Claims.

Oct. 27, 2006.

Thomas F. DeCaro, Jr., Decaro & Howell PC, Upper Marlboro, Maryland, for Plaintiffs.

David R. House, with whom were Eileen J. O'Connor, Assistant Attorney General, Mildred L. Seidman, Chief, and Steven I. Frahm, Assistant Section Chief, United States Department of Justice, Court of Federal Claims Section, Washington, DC, for Defendant.

## OPINION AND ORDER

WHEELER, Judge.[1]

These consolidated cases are before the Court on cross-motions for summary judgment on the Government's counterclaim alleging that Plaintiffs owe additional interest for the 1979 tax year. At issue is whether Plaintiffs' payment in satisfaction of certain Tax Court stipulations and an Internal Revenue Service ("IRS") Form 906 closing agreement with the Government included interest. For the reasons explained below, the Court concludes that these agreements did include interest, and that Plaintiffs do not owe additional interest. The Court therefore GRANTS Plaintiffs' motion for summary judgment on the counterclaim, and DENIES Defendant's cross-motion.

### Background[2]

In what has become a 21-year legal battle, Plaintiffs Joseph LaRosa ("LaRosa") and LaRosa's International Fuel Co., Inc. ("LaRosa's International") (collectively "Plaintiffs") filed separate Complaints in this Court on December 12, 1997. The dispute began, however, in December 1985, when the Government instituted jeopardy assessments on members of the LaRosa family and LaRosa's International for the tax years 1979–1983. Following a series of settlements and litigation, the case is now before the Court on cross-motions for summary judgment on the sole remaining issue of Defendant's counterclaim for additional interest claimed due by the IRS for tax year 1979.

In 1985, the IRS determined that LaRosa's International owed $11,920,029 in unpaid taxes, penalties, and interest for the years 1979 through 1983. The IRS also found that the LaRosa family owed $788,665 in unpaid taxes, penalties, and interest for the years 1981 through 1983. (JSOF ¶ 1). Shortly thereafter, Defendant served a series of Notices of Levy seizing approximately $9 million of Plaintiffs' assets pursuant to an Internal Revenue Code Section 6331 jeopardy assessment. On January 16, 1986, the parties entered into an Escrow Agreement, whereby the seized funds were held in escrow subject to the terms in the agreement, and pending resolution of the dispute in the United States Tax Court. The next day, Defendant issued Notices of Deficiency to Plaintiffs "for the taxes and additions to taxes pursuant to the Assessments" associated with the Levies. (JSOF ¶ 10). On March 10, 1986, Plaintiffs filed Petitions in the Tax Court contesting the Notices of Deficiency. Id. ¶ 11.

The parties settled the Tax Court cases with the entry of two stipulated decisions in November 1990. (JSOF, Exh. 3 at 1, 7). Each stipulated decision provided, inter alia, that "the petitioner has reserved the right to pursue an action in the appropriate federal court with respect to the interest claimed to be due by the IRS on the respective deficiencies." Id., Exh. 3 at 6, 11. Elsewhere in the stipulations, the parties state that the Plaintiffs entered into the settlement with the IRS "for the sole and only purpose of finally

---

**1.** These cases were transferred to Judge Thomas C. Wheeler on August 1, 2006, pursuant to Rule 40.1(b) of the Rules of the Court of Federal Claims.

**2.** Unless otherwise noted, the facts discussed herein are from Senior Judge Loren A. Smith's April 3, 2003 opinion in this case, *LaRosa's Int'l Fuel Co., v. United States,* 56 Fed.Cl. 102 (2003) ("*LaRosa I*"), and from the parties' December 2, 2002 Joint Stipulations of Fact ("JSOF").

disposing of these United States Tax Court cases with the IRS." *Id.*, Exh. 3 at 4, 9.

Following entry of the stipulated decisions, the parties engaged in further settlement discussions and reached another agreement in March 1991 ("Form 906 agreement").[3] Pursuant to the Form 906 agreement, Plaintiffs in May 1991 submitted full payment of their tax liabilities, the IRS released the funds and interest held in escrow, and Plaintiffs' IRS account transcripts were adjusted to reflect a zero balance.

Nearly two years later, and in reliance on the reservation of rights in the stipulated decisions cited above, Plaintiffs initiated proceedings to recover what they believed were excessive payments of interest on their former tax liabilities. Plaintiffs filed claims for refund with the IRS on April 29, 1993, asserting that the IRS erroneously assessed interest for the period when Plaintiffs' assets remained in escrow. The IRS denied the claims for refund in December 1995, leading Plaintiffs to file Complaints in this Court. In their Complaints, Plaintiffs allege that as of December 1985, the IRS had actual or constructive possession of Plaintiffs' assets sufficient to satisfy all relevant tax liabilities and, as a matter of law, should have credited the full value of assets seized against the tax assessments and suspended the running of interest as of December 3, 1985. The Government counterclaimed in December 1999 and April 2000—more than eight years after Plaintiffs had paid their tax liability in full—arguing that Plaintiffs owed additional interest on unpaid taxes. *LaRosa I*, 56 Fed.Cl. at 103.

The parties agreed to submit briefs on cross-motions for partial summary judgment, reserving for later the issue of additional interest raised in Defendant's counterclaim. Senior Judge Smith consolidated the two cases by order dated March 10, 2003, to promote judicial efficiency.

On April 3, 2003, Senior Judge Smith granted Defendant's motion for partial summary judgment, relying on the Supreme Court's opinion in *Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). *LaRosa I*, 56 Fed.Cl. at 104. The *Rosenman* Court held that a tax payment occurs only when the IRS actually applies funds to a specific tax liability. Senior Judge Smith noted "it is not enough to place funds into a 'suspense' account, or escrow, which merely functions as a surety against the future payment of said liability." *Id.* With the issuance of the Court's April 2003 decision, the only remaining issue is whether Plaintiffs owe additional interest for the tax year 1979, as alleged in Defendant's counterclaim.

### The Current Proceedings

The Government's counterclaim regarding the 1979 tax year seeks $86,756.76 in unpaid interest due as of April 22, 1991, plus additional interest for the period since that date. Plaintiffs claim that the Tax Court stipulations and the Form 906 agreement bar the Government from assessing additional interest.

### Summary Judgment Standards

Summary judgment is appropriate only when (1) no genuine issue of material fact exists, and (2) the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed.Cir.2001). Summary judgment will not be granted if "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *See also Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 971 (Fed.Cir.2001).

The moving party bears the initial burden of showing an absence of evidence to support the opposing party's case. The non-movant must go beyond the pleadings to show specific facts that give rise to genuine issues of material facts. If the *non-moving party produces sufficient evidence to raise a genuine issue of fact material to the outcome of the case, the motion for summary judgment should be denied. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

---

**3.** The Tax Court proceedings involved tax years 1979 through and including 1983. The IRS Form 906 agreement addressed tax years 1984 and 1985.

In reviewing cross-motions for summary judgment, the Court must conduct an independent analysis for each motion and resolve any doubt on factual issues in favor of each party opposing summary judgment. The benefit of all presumptions and inferences run in favor of the non-moving party in each analysis. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed.Cir.2001).

### Discussion

#### A. The Parties' Arguments

Plaintiffs argue that the Government's counterclaim should be dismissed because Plaintiffs and the Government "entered into a final settlement of the tax, penalty, *and* interest liability." (Plaintiffs' June 16, 2004 Memorandum at 1) (emphasis in original). Plaintiffs alternatively claim that the Government's counterclaim contains flawed interest calculations, *id.* at 7–8, and that the Government is estopped from claiming additional interest. (Plaintiffs' August 2, 2004 Reply at 2–3).

The Government responds that Plaintiffs have failed to prove the existence of any written agreement signed by an authorized IRS representative resolving Plaintiffs' total liability or interest liability for the 1979 tax year. (Defendant's July 22, 2004 Memorandum at 7). Additionally, the Government claims that its expert, Mr. Thomas Blake, properly calculated the interest requested in the counterclaim. *Id.* at 10. The Government opposes Plaintiffs' estoppel argument. (Defendant's August 19, 2004 Reply at 4).

The Court will first address the question of whether Plaintiffs owe the additional interest requested in Defendant's counterclaim.

#### B. Plaintiffs Owe No Additional Interest

##### 1. Tax Settlements as Contracts

Courts, including this Court and the United States Tax Court, interpret tax settlement agreements as contracts. *See Int'l Paper*

*Co. v. United States*, 36 Fed.Cl. 313, 321 (Fed.Cl.1996) ("the parties to a[tax] settlement agreement 'are bound to the terms agreed upon and not to the premises underlying their agreement[.]' In other words, 'general contract law principles govern tax case settlements[.]'") (citations omitted). *See also Treaty Pines Invs. P'ship v. Commissioner*, 967 F.2d 206, 211 (5th Cir.1992); *Dutton v. C.I.R.*, 122 T.C. 133, 138, 2004 WL 244382 (U.S. Tax Ct. Feb 11, 2004). Accordingly, the familiar maxims of contract interpretation apply to the agreements in this case.[4]

Contract interpretation begins with the plain language of the written agreement. *Foley Co. v. United States*, 11 F.3d 1032, 1034 (Fed.Cir.1993). As with all contracts, whether a provision in a tax settlement agreement is ambiguous is a question of law. *NVT Technologies., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed.Cir.2004) (citing *Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1579 (Fed.Cir.1993)). A contract must be considered as a whole and interpreted in such a manner to harmonize and give reasonable meaning to all of its parts. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434–35 (Fed.Cir.1996). Courts prefer an interpretation that gives meaning to all contract parts over an interpretation that leaves a portion of the contract useless, inexplicable, void, or superfluous. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir. 1991).

##### 2. Existence of a Binding Contract

Preliminarily, the Court notes that the parties do not dispute the existence, validity, and enforceability of the Tax Court stipulations or the Form 906 agreement. Nonetheless, the Government claims that Plaintiffs have offered evidence only of a meeting at which the parties reached an oral agreement resulting in Plaintiffs' 1991 tax payment to the IRS. Defendant states, "[Plaintiffs] submit no written agreement. Instead, [they contend] a settlement agreement was

---

**4.** Contract interpretation raises questions of law, which are particularly suited to resolution by summary judgment. *City Crescent Ltd. P'ship v. United States*, 71 Fed.Cl. 797, 803 (2006). *See*

*also Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed.Cir.1998); *Metric Constructors, Inc. v. United States*, 44 Fed.Cl. 513, 520 (1999).

reached March 19, 1991, relying on a discussion at that time regarding balance due for tax years 1979 through 1985." (Defendant's July 22, 2004 Memorandum at 8). Defendant continues, "[i]nstead of pointing to a written agreement, [Plaintiffs offer their] description of the discussion at a meeting that resulted in [Plaintiffs' decision] to make a payment, rather than have the [IRS] collect against [Plaintiffs'] property held in escrow." *Id.*

In support of this argument, Defendant cites *Bunce v. United States* for the proposition that "the IRS is not bound by any agreement which does not comply exactly with compromise procedures provided by statute and regulation." *Bunce v. U.S.*, 28 Fed.Cl. 500, 504 (1993), *aff'd*, 26 F.3d 138 (Fed.Cir.1994), *cert. denied*, 513 U.S. 1043, 115 S.Ct. 635, 130 L.Ed.2d 542 (1994). Specifically, Defendant asserts that closing agreements must be in writing on forms prescribed by the IRS, as set forth in 26 C.F.R. § 301.7172–1(d)(1), (3) (implementing the compromise procedures in 26 U.S.C. § 7122). (Defendant's July 22, 2004 Memorandum at 7). As the Fifth Circuit observed, however, "[a]lthough 26 C.F.R. § 301.7121–1(d)(1) specifies that all closing agreements shall be on forms prescribed by the IRS, it does not state that all settlement agreements shall be on such forms, and *Haiduk* holds that binding settlement agreements may be concluded without [Form 906] closing agreements." *Treaty Pines*, 967 F.2d at 212 (citing *Haiduk v. Commissioner*, 60 T.C.M. (CCH) 864, 1990 WL 136717 (1990)).

As noted, this case involves both a Tax Court stipulation and a Form 906 agreement. Because neither party disputes the general binding effect of these documents, the Court finds as a threshold matter that there is no genuine issue of material fact regarding the existence of binding agreements between the parties for tax year 1979. The Tax Court stipulations and Form 906 agreement meet the IRS regulatory standards to bind the Government.[5] The Court therefore views this dispute as a question of whether the Tax Court stipulations and Form 906 agreement

resolved Plaintiffs' "total liability" or "interest liability."

### 3. *Contract Interpretation Arguments*

The Government asserts that interest payments remain outside the scope of the Tax Court stipulations and Form 906 agreement. Plaintiffs on the other hand maintain that they met all interest payment obligations by tendering full payment in May 1991 under the Tax Court stipulations and Form 906 agreement. The primary disagreement centers on the meaning of the reservation of rights in the last paragraph of each stipulation, in which the parties state:

> It is stipulated that the petitioner has reserved the right to pursue action in the appropriate federal court with respect to the interest claimed to be due by the I.R.S. on the respective deficiencies.

(JSOF, Exh. 3 at 6, 11). On the last page of each stipulation is the name and title of the Chief Counsel of the IRS, as well as the signatures of Plaintiffs' counsel and the IRS Special Trial Attorney. *Id.*

Plaintiffs argue that their reservations of rights indicate that the parties intended to include interest with the final payment amount described in the Tax Court stipulations (and later in the Form 906 agreement). Defendant argues the stipulations only reserve a *litigation* right to Plaintiffs. Further, because the stipulations lack mention of interest, Defendant claims the Tax Court stipulations do not prohibit the Government from assessing interest at a later time. The Government states, "there was no asymmetric written agreement under which the United States, but not [Plaintiffs], was bound with respect to interest, and the [plaintiffs] offers none." (Defendant's July 22, 2004 Memorandum at 3).

### 4. *The Court Interprets the Contracts to Include Interest*

■ Despite ambiguities inherent in the individual stipulations excerpted above, by viewing the stipulated decisions in their en-

---

**5.** *See Anthony v. United States*, 987 F.2d 670 (10th Cir.1993) (holding that a Tax Court stipulation binds the IRS).

tirety and within their respective "four corners," [6] the Court finds that the stipulations unambiguously include all tax, penalty, and interest liability. Relevant to this determination are the stated reasons that Plaintiffs entered into the stipulations. The documents provide, for example, that Plaintiffs desired to "finally" dispose of "these United States Tax Court cases with the IRS." (JSOF, Exh. 3 at 4, 9). This desire is plainly inconsistent with an interpretation in which the question of interest due is left open.

Moreover, the stipulations provide that Plaintiffs "want to end this nightmare of almost five years duration." *Id.* at 5, 10. The "end" to a "nightmare" carries with it a strong suggestion of finality, which in this case by necessity would include settlement of interest payments. Indeed, the final stipulation, in which Plaintiffs reserve the right to pursue an action in federal court, employs the past tense in the phrase "interest claimed to be due by the I.R.S." Combined with the statement regarding an "end" to the Tax Court cases, this language evidences to the Court that the parties already included the interest in the stipulated settlement amount.

While the Government could argue that the Tax Court lacks jurisdiction over interest payments,[7] and therefore an "end" of Tax Court litigation would not include interest, there was no such infirmity in the Tax Court's jurisdiction in the present litigation. As the Tenth Circuit noted in *Anthony v. United States,* jurisdiction over questions of interest may lie in the Tax Court where that Court is not engaged in an "independent determination of interest due," but rather in a "pro forma acceptance of the parties' stipulated agreement." *Anthony v. United States,* 987 F.2d 670, 672–673 (10th Cir.1993) (citing *United States v. Int'l Bldg. Co.,* 345 U.S. 502, 504–05, 73 S.Ct. 807, 97 L.Ed. 1182 (1953)). Moreover, the timing of the stipulation statement shows that the LaRosas' "nightmare of almost five years duration" included more than the Tax Court proceedings. The parties signed the Tax Court stipulation in June 1990, while the original Tax Court petition was filed in March 1986, more

than four years earlier. In contrast, the original IRS jeopardy assessment began in December 1985, which would better explain the "almost five years" as including the entire IRS involvement with the LaRosas' tax concerns. The Court believes the parties saw the agreement as an "end" to not only the Tax Court proceedings, but to the LaRosas' federal tax disputes in general. That view necessarily includes statutory interest payments.

The Government argues that the Tax Court stipulations could not be final, because the parties needed information later decided to accurately calculate amounts due. The Government also says, however, "at a later date, the interest amount was computed (albeit incorrectly), added to the deficiency, and paid by the plaintiff." (Defendant's August 19, 2004 Reply at 3 n. 2). Given the interpretation of the Tax Court stipulation as bringing an "end" to the tax collection process, the Court finds that the parties intended the Plaintiffs' payment to "end" the process, without regard to how the payment amount was calculated or transmitted to Plaintiffs, and without regard to Defendant's present position as to the accuracy of the interest computation.

Given the strength of Plaintiffs' arguments with respect to the Tax Court stipulations and the Government's admission that interest was indeed "computed . . ., added to the deficiency, and paid by the plaintiff," *id.,* the Court finds the Government's claim for additional interest to be without merit.

### C. *Plaintiffs' Alternative Arguments*

In light of the Court's determination that the tax settlement agreements included interest, the Court need not address Plaintiffs' alternative argument that the Government's expert, Mr. Blake, incorrectly computed the interest due because he allegedly failed to take the settlement into account. As found above, the settlement did include interest payments, and therefore any calculation of Plaintiffs' federal tax liabilities should take that statement into account.

---

**6.** *See* Restatement (Second) of Contracts, § 202 (1979).

**7.** *Commissioner v. McCoy,* 484 U.S. 3, 7, 108 S.Ct. 217, 98 L.Ed.2d 2 (1987).

Similarly, the Court need not address Plaintiffs' estoppel claim. While recognizing the difficult burden of establishing an estoppel claim against the Government, the Court notes that Plaintiffs thought they had paid their tax liabilities in full in May 1991, only to find in December 1999 and April 2000 that the Government was asserting a counterclaim based on a new interest calculation. Plaintiffs may have prevailed on this independent estoppel or waiver ground if the Court had not found the tax settlement agreements dispositive.

*Conclusion*

The Court concludes that the Tax Court stipulations and the Form 906 settlement agreement included interest. Therefore, the Court GRANTS Plaintiffs' motion for summary judgment on Defendant's counterclaim and DENIES Defendant's cross-motion for summary judgment. The Court interprets the agreements as contracts and relies solely upon the language of the agreements to find as a matter of law that the monies paid as a result of these agreements included interest payments. The Clerk of the Court shall therefore DISMISS with prejudice consolidated cases No. 97–834T and 97–835T.

IT IS SO ORDERED.